Domingo GUAJARDO, et al., Plaintiffs

v.

Juan M. DEANDA, et al., Defendants.

Civil Action No. M–09–153.

United States District Court,
S.D. Texas,
McAllen Division.

Feb. 10, 2010.

540

Rodolfo David Sanchez, Texas Riogrande Legal Aid Inc., Weslaco, TX, Sarah E. Donaldson, Texas Riogrande Legal Aid Inc., San Antonio, TX, for Plaintiffs.

Austin D. Kennedy, Allison Marie Steuterman, Brick Gentry. PC, West Des Moines, IA, for Defendants.

## MEMORANDUM AND ORDER

DORINA RAMOS, United States Magistrate Judge.

Pending before the Court is the Defendants' Opposed Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue for Convenience and in the Interests of Justice, with memorandum of law in support.[1] (Dkt. Entry Nos. 12; 13.) The Plaintiffs have responded to the Motion, and both parties have filed supplemental briefing. The Court heard oral arguments on the matter.

After consideration of the pending motion, pleadings on file, arguments of counsel, and the relevant law, Defendants' Motion is **DENIED** for the reasons set forth in this Memorandum and Order.

### I. Summary of the Case

This case was filed in federal court on June 8, 2009. Subject matter jurisdiction is premised on 28 U.S.C. § 1331, pursuant to the Agricultural Workers Protection Act ("AWPA"), codified at 29 U.S.C. § 1801 and § 1872. Additionally, the Plaintiffs assert state law claims under the Court's ancillary jurisdiction pursuant to 28 U.S.C. § 1367.

The Plaintiffs bring causes of action against the Defendants for (1) violation(s) of AWPA under 29 U.S.C. § 1801; (2) breach of contract; and (3) promissory estoppel. The Plaintiffs seek (1) a statutory damage award of $500.00 to each Plaintiff, or their actual damages, whichever is greater, for each violation of the AWPA pursuant to 29 U.S.C. § 1854(c); (2) actual, incidental, and consequential damages for the Defendants' breach of contract and breach of promises to each Plaintiff; and (3) further relief as this Court deems just and proper.

### II. Facts Relevant to the Pending Motion

#### A. General Facts

Defendant Deanda Bean Walkers & Detasslers, Inc. ("BWD"), is a corporation incorporated under the laws of Iowa. (Dkt. Entry No. 13 at 1–2.)[2] BWD is co-owned and controlled by four Deanda brothers, including Juan, Refugio, Arturo and Jose. (Id. at 1–2.) Juan and Arturo are named defendants in the case at bar. All four Deanda brothers live in Sioux City Iowa, and BWD is headquartered there. (Id. at 2.) Defendant Arturo Deanda is listed with the Iowa Secretary of State as the President and Director of BWD, while Juan Deanda is listed as the Secretary and Director of BWD. (Dkt. Entry No. 19 at 8.)

---

1. This case is before the undersigned pursuant to the consent of the parties. (Dkt. Entry No. 20.)

2. Citations to the parties' briefs or pleadings includes, as may be relevant, reference to the party's internal citations to its attachments, exhibits, or other evidentiary support.

The Plaintiffs reside in Hidalgo County, Texas. (See id. at 2.)

BWD states that it uses a combination of domestic employees and employees in H–2A status (migrant workers) to perform temporary agricultural work in the states of Iowa, Minnesota, and South Dakota. (Dkt. Entry No. 13 at 3.) In 2007, as part of the Defendants' efforts to recruit a temporary or seasonal agricultural labor force, BWD submitted a Labor Certification Application and Labor Clearance Order to the U.S. Department of Labor. (Id. at 3.) According to the Defendants, although BWD filed an "interstate clearance order" to the Labor Department, the Defendants never requested or directed that such clearance order or labor certification application be sent to Texas. (Id.) The Defendants contend that the Department of Labor, OFLC Administrator determines and directs where such documentation is sent in order to effect interstate recruitment. (Id.) The Defendants contend that 2007 was the first year they submitted an Interstate Clearance Order in an attempt to acquire employees with H–2A status. (See id.) Defendant Juan Deanda, signed and filed, on behalf of and in his corporate position with BWD, a labor certification application and labor clearance order. (Dkt. Entry No. 19 at 3.) Mr. Juan Deanda is listed as "contractor" on the application for employment certification for Clearance Order No. 8871165. (Id. at 8–9.)

In the labor certification application and the labor clearance order, among other things, the Defendants stated that: they had 30 detasseler and bean walker openings; the job positions required zero experience; the job positions required zero education; the job paid $10 per hour for each hour worked each week up to 40; the job paid $15 per hour for each worked each week over 40; workers could expect to work 10 hours per day; that workers could expect to work 50 hours per week; work would last from June 25, 2007 through October 15, 2007; free, clean housing, that met applicable housing standards would be provided; and that the Defendants would accept referrals from the state workforce agency, word of mouth, gate hires, and other sources. (Dkt. Entry No. 19 at 3.) The Defendants also noted that individuals referred through state workforce agencies could call for interviews. (Id.) The Defendants also certified that the job opportunity was open to any qualified U.S. worker. (Id.)

In 2007, the Plaintiffs went to the Texas Workforce Solutions office in Mercedes, Texas, in search of work. (Dkt. Entry No. 16 at 4.) At the Texas Workforce Solutions office in Mercedes, they learned of the job opportunity with BWD. (Id.) A Texas Workforce Solutions worker called BWD to let BWD know that the Plaintiffs wanted to accept the positions offered by BWD. (Id.) Texas Workforce Commission ("TWC") employee Mario Galvan referred the Plaintiffs for employment with DWB. (Dkt. Entry No. 19 at 3.) The Plaintiffs were provided copies of job applications for work with the Defendants while in Texas. (Id. at 4.) The Plaintiffs contend that either Juan or Arturo Deanda faxed at least one "generic job application" to the Texas Workforce Solutions office in Mercedes Texas. (Dkt. Entry No. 16 at 4.) The Plaintiffs completed the generic job applications in Texas and copies of the completed applications were faxed from Texas to BWD in Iowa. (Id. at 4–5.) The Plaintiffs contend they accepted the Defendants' employment offer in Texas.[3] (Id. at 5.)

---

3. As there appears to be conflict among the parties and the record evidence regarding which state the employment was accepted or consummated in, these factual conflicts must

After receiving the completed job applications, the Defendants claim they made one telephone call, or, at best, placed a maximum of two telephone calls and sent one fax letter to the Plaintiffs in Texas and invited the Plaintiffs to come to Iowa to apply for the job opportunity. (Dkt. Entry No. 13 at 12–13.) The Plaintiffs claim that after receiving the completed job applications, one of the individual Deanda Defendants called Plaintiff Domingo Guajardo at Mr. Guajardo's home in Weslaco, Texas, to discuss, among other things, the work being offered. (Dkt. Entry No. 16 at 5.) According to the Plaintiffs, either Juan or Arturo Deanda contacted a Plaintiff several more times in Texas to get information about the trip to Iowa and to provide driving directions. (*Id.*)

According to the Plaintiffs, after they accepted the employment, they drove to Iowa for the jobs. (*Id.*) The Defendants stress that they did not pay for or provide the Plaintiffs with any resources to come to Iowa, but rather that the Plaintiffs paid entirely their own way and drove their own car. (Dkt. Entry No. 13 at 3–4.) The Defendants claim that they merely invited the Plaintiffs to Iowa for an interview and that the Plaintiffs were not hired until they were actually and physically in Iowa. (*Id.*) The Defendants contend that once the Plaintiffs arrived in Iowa, on or about July 7, 2007, the Plaintiffs completed applications, questionnaires and contractual documents specifically tailored to BWD and were hired while physically located in Iowa. (*Id.* at 4.)

The Plaintiffs allege that after arriving in Iowa, the Plaintiffs found out that some of the terms and conditions of employment and housing that had been offered to them at the time they were recruited in Texas turned out to be false. (Dkt. Entry 16 at 5.) The Defendants contend that only Plaintiff Domingo Guajardo was terminated for cause—specifically, that Mr. Guajardo was "physically intimidating and threatening Bean Walkers's other employees." (Dkt. Entry No. 13 at 4.) The Defendants claim they made clear to the other Plaintiffs (Guillermo and Mark Anthony) that they were not terminated, but that they left with Mr. Domingo Guajardo anyhow. (*Id.*)

Because the Court must determine whether the Court has jurisdiction over each Defendant, the Court turns to more specific alleged facts regarding Juan and Arturo Deanda.

## B. Juan Deanda

Juan Deanda submitted the clearance order in 2007, and it was received by the TWC. (Dkt. Entry No. 19 at 4.) Between June 12 and June 25, 2007, Defendant Juan Deanda communicated with TWC employee Carlos X. Pena regarding the recruitment of Texas farm workers and interviewed by phone five job applicants referred by Mr. Pena. (*Id.* at 4–5.) Defendant Juan Deanda faxed Mr. Pena job applications, which Mr. Pena helped Texas applicants to complete. (*Id.* at 5.) Mr. Pena then faxed the applications back to Defendant Juan Deanda. (*Id.*) On approximately June 12, 2007, Mr. Pena left a phone message for Defendant Juan Deanda, informing Defendant that a Texas applicant was interested in applying for work and asking that Defendant call him back. (*Id.*) The same day, Defendant Juan Deanda returned the call and told Mr. Pena that, contrary to the provision in the clearance order, no overtime would be paid.

be resolved in favor of the Plaintiffs. *See Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir.2000).

(*Id.*) On approximately June 13, 2007, either Defendant Juan or Arturo interviewed two Texas applicants referred to by Mr. Pena. (*Id.*) During the conversation, either Defendant Juan or Arturo told the applicants that, contrary to the clearance order, the applicants would need to work in various states other than Iowa and that workers would be paid by the acre rather than by the hour. (*Id.*) On approximately June 14, 2007, Mr. Pena contacted either Juan Deanda or Arturo Deanda to refer a Texas applicant, and the Defendant told Mr. Pena that he would call Texas applicants on approximately June 20, 2007, to confirm their departure dates. (*Id.*)

On approximately June 21, 2007, Defendant Juan Deanda spoke with two applicants referred by TWC employee Leonar Tamez. (*Id.*) On that same day, Defendant Juan Deanda spoke with TWC employee Mario Galvan regarding the recruitment of Texas farm workers to work for the Defendants in Iowa and regarding Plaintiffs Domingo Guajardo and Guillermo Guajardo, who wanted to accept the positions offered. (*Id.* at 5–6.) While Plaintiff Domingo Guajardo was in the TWC office, Defendant Juan Deanda spoke with Plaintiff Domingo Guajardo over the phone regarding his previous work experience. (*Id.* at 6.) Defendant Juan Deanda then faxed an application to Mario Galvan and each Plaintiff completed the application at the TWC office, and the applications were faxed by Mr. Galvan to the attention of both Juan and Arturo Deanda. (*Id.*) Thereafter, either Juan or Arturo Deanda then called Plaintiff Domingo Guajardo at his home to discuss possible work and later to give driving directions. (*Id.*)

### C. Arturo Deanda

In 2007, TWC employees knew that Arturo Deanda was the person who "did the hiring" for BWD. (*Id.* at 6–7.) In 2007, Defendant Arturo Deanda spoke with TWC employees Carlos X. Pena and Mario Galvan about individuals in Texas who were interested in working for the Defendants in Iowa. (*Id.* at 7.) TWC employee Carlos X. Pena contacted Defendant Arturo Deanda to arrange phone interviews with Texas workers. (*Id.*) On approximately June 13, 2007, either Defendant Juan or Arturo interviewed two Texas applicants referred by Mr. Pena. During the conversation, either Defendant Juan or Arturo told the applicants that, contrary to the clearance order, the applicants would need to work in various states other than Iowa and that workers would be paid by the acre rather than by the hour. (*Id.*)

On approximately June 22, 2007, Defendant Arturo Deanda called the TWC in order to interview Texas workers. (*Id.*) During this phone call, Defendant Arturo Deanda discussed his hiring preference with TWC employee, Leonor Tamez, and he discussed the terms and conditions of the work in Iowa for Texas workers in 2007. (*Id.*)

Defendant Arturo Deanda also hired applicants from Texas in 2007. (*Id.* at 8.) On approximately June 25, 2007, Defendant Arturo interviewed and committed to hire four applicants. (*Id.*) On approximately June 26, 2007, Defendant Arturo promised employment to between four and five Texas workers who applied through the TWC. On June 25, 2007, Mr. Arturo told Mr. Pena of the TWC that he was going to have his attorney call Mr. Pena. (*Id.*) Thereafter, either Juan or Arturo Deanda then called Plaintiff Domingo Guajardo in Texas to discuss work or provide to give driving directions. (*Id.*)

### III. Applicable Law & Analysis

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The Defendants move for dismissal under Rule 12(b) for lack of personal jurisdic-

tion. In response, the Plaintiffs argue that this Court has specific personal jurisdiction. Alternatively, should the Court find no personal jurisdiction, the Plaintiffs request additional time for discovery on the question of general personal jurisdiction. No evidentiary hearing was held on the Defendants' pending motion to dismiss.

## 1. Applicable Law

A plaintiff opposing a motion to dismiss for lack of jurisdiction bears the burden of establishing the district court's jurisdiction over the defendant. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir.1990); *Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F.Supp.2d 725, 728 (S.D.Tex. 2006) (citing *Gonsalez Moreno v. Milk Train, Inc.*, 182 F.Supp.2d 590, 593 (W.D.Tex.2002)). "When, as here, the district court conducted no evidentiary hearing, the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Alpine View Co.*, 205 F.3d at 215. Also, if the district court decides the merits of the motion to dismiss without an evidentiary hearing, uncontroverted allegations in the complaint must be taken as true and all factual conflicts in the parties' affidavits and other summary judgment type evidence must be resolved in favor of the plaintiffs. *Id.*

■ Like the case at bar, "[w]hen a federal question case is based upon a federal statute that is silent as to service of process, Federal Rule of Civil Procedure 4(e) permits a federal court to exercise jurisdiction over only those defendants who are subject to the jurisdiction of

courts of the state in which that court sits." *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir.1992) (internal citations omitted). "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.2009) (citation omitted).[4] "As the Texas long-arm statute extends as far as constitutional due process allows, [courts] only consider the second step of the inquiry." *Id.* (citations omitted).

■ "Due process limits a court's assertion of personal jurisdiction over nonresident defendants to cases where these defendants purposefully establish 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Aviles*, 978 F.2d at 204 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir.2001). "General jurisdiction" arises when the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). On the other hand, a court exercises "specific jurisdiction" in "a suit arising out of or related to the defendant's

---

4. The Texas long-arm statute provides that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." Tex. Civ. Prac. & Rem.Code § 17.042.

contact with the forum." *Id.* at 414 n. 8, 104 S.Ct. 1868.

The Fifth Circuit has articulated "a three-step analysis for specific jurisdiction:'(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiffs cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *McFadin*, 587 F.3d at 759 (citations omitted). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Id.* (citations omitted). "The defendant must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party, or third person.'" *Id.* (citations omitted).

## 2. Minimum Contacts

■ The Plaintiffs argue that BWD purposefully established minimum contacts with Texas through the actions of its authorized agents, Juan and Arturo Deanda. The Plaintiffs point to their affidavits to show that Juan and Arturo Deanda are authorized agents of the company. (Dkt. Entry No. 19 at 20.) Plaintiffs argue that BWD purposefully established minimum contacts in Texas by signing and filing the interstate clearance order, engaging in telephone calls with the TWC in Mercedes, Texas, regarding certain clearance orders and regarding the Guajardo Plaintiffs, speaking over the phone to one of the Plaintiffs regarding previous work experience, faxing a job application to the TWC and receiving completed job applications from TWC, and calling a Plaintiff in Texas

to discuss the terms of work and calling again to provide them with directions to Iowa. (*Id.*) The Plaintiffs contend that they accepted the job offer in Texas. (*Id.*) The Plaintiffs also contend that BWD advertised in Texas in 2007. (*Id.*) For these same reasons, Plaintiff contend that specific jurisdiction over the individual Defendants is established.

■ The Court finds that the Plaintiffs have established that Defendants Juan M. Deanda and Arturo Deanda are authorized agents of BWD and that BWD established minimum contacts with Texas through the authorized actions of these agents. (*See* Dkt. Entry No. 19 at 19–20.) Moreover, the Court finds that the Plaintiffs have shown that the Juan and Arturo Deanda each had sufficient contacts with Texas to satisfy the minimum-contacts requirement of the personal-jurisdiction issue.

Additionally, the Plaintiffs have shown that their claims against the company and the individual Defendants arise out of or relate to the company's and the individual defendants' minimum contacts with Texas. Plaintiffs claims that the Defendants failed to adequately disclose in writing the terms and conditions of employment as required by AWPA, knowingly provided the Plaintiffs with false and misleading information regarding the terms and conditions of employment, and violated the terms of the working arrangement. Further, the Plaintiffs claim that the company employed or used Arturo Deanda to perform farm labor activities though he was not authorized to do so, and this claim relates to and arises out of the alleged unauthorized recruitment activities in Texas. Plaintiffs claim that the Deanda Defendants provided false and misleading employment-related information and failed to comply with the terms of the working arrangement and that this alleged wrongdoing arises out of or relates to the contacts in Texas, including the

phone contact and fax transmissions with TWC employees, phone contact with at least one or two Plaintiffs, and general utilization of TWC to facilitate their recruitment in Texas—all of which started once the paperwork was circulated through Texas. The Court finds Plaintiffs' alleged facts to be sufficient and accepts Plaintiffs' analysis of the connection between the claims, each Defendant, and the contacts. (*See* Dkt. Entry No. 19 at 10–11 (Juan Deanda); 12–13 (Arturo Deanda); and 21(BWD)).

The Defendants argue that their activities cannot be construed as having conducted business in the state of Texas. The Defendants argue that they have never lived in Texas, have never conducted business in Texas and have not had anything even remotely approaching an agency relationship with a recruiting agent located in Texas. The Defendants argue that, at most, two phone calls and one fax to the state of Texas are not sufficient contacts for personal jurisdiction.

However, case law shows that recruiting forum residents for out-of-state employment may subject the non-resident defendant to the exercise of specific personal jurisdiction in the forum state. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 974 (5th Cir.1984) ("[C]onsistent with due process, an employer fairly may be sued for employment practices in the forum in which he has recruited his employees and caused them to undertake their work."); *see also Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 n. 1 (9th Cir.2002) (finding jurisdiction and collecting cases where courts have found personal jurisdiction in cases where migrant farm workers were recruited by a labor contractor in one state to work on a farm in another state). The nature and quality of the contacts in this instant case involve the recruitment in Texas of migrant farm workers, who are residents of Texas, by a non-resident employer, and the claims relate to or arise out of these contacts. In this context, courts have readily found specific jurisdiction over a non-resident farm employer in the state of the worker's residence under facts similar to the ones in this instant case—*i.e.*, the defendants make employment information available in the forum state, affirmatively engage in recruitment efforts in the forum state, whether through an intermediary or agent, place phone calls to the forum state to discuss the terms of employment, extend offers of employment or finalize employment arrangements while the workers are in the forum state. *See, e.g., Moreno v. Poverty Point Produce, Inc.*, 243 F.R.D. 265, 270–72 (S.D.Tex.2007) (Tagle, J.) (concluding that the out-of-state employer's recruitment activities in Texas were sufficient to satisfy the "minimum contacts" requirement of the due process test in relation to the plaintiffs' claims under AWPA and FLSA); *Sarmiento*, 439 F.Supp.2d at 729 (Crane, J.) (discussing in detail the "discrete body of caselaw . . . in the Fifth Circuit involving the exercise of personal jurisdiction over nonresident defendants in suits brought by migrant farm workers"); *Gonsalez Moreno*, 182 F.Supp.2d at 594 (concluding that the out-of-state employer directed its recruitment activities at the residents of Texas and that the recruitment activities satisfied the minimum-contacts requirement in relation to the claims brought under AWPA and state law claims of breach of contract, fraud, negligent misrepresentation, and retaliatory discharge); *Martinez v. Murray Employment Agency, Inc.*, Civ. No. L–98–77 (S.D.Tex.1999) (unpublished) (finding jurisdiction over company that hired migrant worker from Texas through interclearance/TWC referral system) (Kazen, J.); *Astorga v. Connleaf, Inc.*, 962 F.Supp. 93, 95 (W.D.Tex.1996) (finding jurisdiction

over non-resident company due to the defendant's recruitment of agricultural workers in Texas by way of a recruiter); *Lozano v. Gonya Farms,* Civ. No. M–89–119 (S.D. Tex. April 10, 1990) ("The purposeful act of making employment information available, whether directly or through another party, to an intermediary located in Texas is sufficient to bring the Defendants under the jurisdiction of this Court."); *Garcia v. Vasquez,* 524 F.Supp. 40, 42 (S.D.Tex.1981) (same or similar); *cf. Flores v. A.C., Inc.,* No. 02–CA–0200–DB, 2003 WL 1566507, *10 (W.D.Tex. Mar. 5, 2003) (Briones, J.) (finding no jurisdiction, in large part, because the independent contractor acted unilaterally to recruit workers, with little or no intervention from the defendant). Although not all of the cases cited in this paragraph are binding, the reasoning and factual similarities of the cases are instructive.

The Defendants argue that this instant case is similar to the facts in *Aviles v. Kunkle,* 978 F.2d 201 (5th Cir.1992), where the Fifth Circuit found no jurisdiction over the-out-of-state defendants. In *Aviles,* migrant workers from Texas, who were in Ohio at the end of 1982 harvest, were offered and accepted employment in Ohio with the defendant for the 1983 harvest. *Id.* at 203. During the spring of 1983, an agent of the defendant telephoned one of the plaintiffs in Texas and informed her when the workers should arrive in Ohio for the harvest. *Id.* A letter confirming the start date was subsequently sent. *Id.* The complaint alleged that, during their employment in Ohio, the defendant violated AWPA and the Fair Labor Standards Act ("FLSA"). *Id.* at 204. The Fifth Circuit held that specific jurisdiction over the non-resident defendant did not exist because the plaintiff's claims arose out of events in Ohio, not Texas. *Id.* at 204. Specifically, the court noted that the plaintiff's "cause of action is not based upon any contract,

tort, or recruitment in Texas, but upon the alleged violation of two federal statutes arising solely out of their employment in Ohio." *Id.* As the defendant's only contact with Texas was "one telephone call and one letter which merely advised the plaintiffs of the start date of the employment which they had already accepted the previous summer in Ohio," the court held that this "limited contact alone" was insufficient to allow the exercise of specific jurisdiction. *Id.*

The instant case is distinguishable from *Aviles.* First, the Plaintiffs' claims arise out of or relate to the Defendants' recruitment in Texas. The Plaintiffs allege that the offer of employment was extended and accepted while they were in Texas and that the terms and conditions of employment were different than was represented to them in Texas. Plaintiffs bring state causes of action against Defendant for breach of contract and promissory estoppel in addition to the federal AWPA claims.

Moreover, the instant case involves more than the "limited contacts" described in *Aviles.* Contrary to Defendant's argument, this instant case involves more than "two phone calls and one fax to the state of Texas." Once the Defendants became aware that the clearance order information was circulated to Texas and were contacted by TWC, the Defendants directed their recruitment efforts towards Texas and the Plaintiffs. The Defendants availed themselves of the services of a state agency, TWC, in recruiting the Plaintiffs and other resident workers. The Defendants' continued contacts with and reliance on TWC, which benefitted the Defendants, and the Defendants' recruitment of and direct contact with the Plaintiffs, certainly distinguishes this instant case from *Aviles. Cf. Aviles,* 978 F.2d at 205 (citing cases with parentheticals to explain why the contacts

in *Aviles* were insufficient, such as the mere act of contracting, the mere fortuity of the plaintiff being a resident of the forum state, or contacts based on unilateral actions by the plaintiffs or an unrelated third party).

Defendants argue that personal jurisdiction is not proper based solely on the filing of an interstate clearance order. According to the Defendants, although the order and labor certification were filed as part of their effort in 2007 to obtain workers in H–2A status, the Defendants "never requested or directed that such clearance order or labor application be sent to Texas. Defendants cite the federal regulations in support of its argument that it was the U.S. Department of Labor, OFLC Administrator who determined and directed where such clearance orders were to be sent. The pertinent federal regulation states in part that the "notice shall require that the job order be placed into intrastate clearance and into interstate clearance to such states as the OFLC Administrator shall determine to be potential sources of U.S. workers." 20 C.F.R. § 655.105(a)(2008).

The Court finds the argument unavailing under the facts of this case. As an initial matter, the Court does not find the interstate clearance order process to be dispositive of the minimum contacts inquiry. Rather than compartmentalize each contact, the court looks at the nature and quality of all the alleged contacts in conducting the minimum-contacts analysis. *McFadin*, 587 F.3d at 759 ("The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'"). For the purposes of Plaintiffs' argument regarding minimum contacts, the record shows that the Defendants voluntarily participated in the program to recruit laborers and, by virtue of the regulations, had a certain degree of knowledge that the clearance orders would be submitted into a system that would circulate the orders to states such as Texas—traditional recruiting spots for agricultural workers. In addition, Defendant's own clearance orders states that the Defendants would accept referrals from the state workforce agency, word of mouth, gate hires, and other sources; that individuals referred through state workforce agencies could call for interviews; and that the job opportunity was open to any qualified U.S. worker.

More importantly, however, the Defendants' argument ignores Plaintiff's evidence of the affirmative recruiting activities that occurred in Texas subsequent to the clearance order being circulated through Texas. *Cf. Chery v. Bowman*, 901 F.2d 1053, 1057 (11th Cir.1990) (noting that lower courts have upheld the exercise of personal jurisdiction over out-of-state defendant agricultural employers participating in the interstate clearance order system when the defendants had some contact with the forum state in addition to the circulation of clearance orders). Once the clearance order was sent to Texas, the Defendants took affirmative steps in Texas to recruit workers. As part of its recruiting efforts, Juan and Arturo Deanda placed, received, and responded to calls from the TWC in relation to the clearance orders, sent and received fax transmissions from TWC, and, acting on this phone and fax correspondence, subsequently called one or two of the Plaintiffs directly regarding employment and ultimately hired the Plaintiffs.

Defendants also argue that case law shows that, in cases dealing with migrant laborers attempting to exercise personal jurisdiction against an out-of-state defendant, a finding of the non-resident having

an agency relationship with a recruiter operating in Texas is key to a finding that the exercise of personal jurisdiction is proper over the non-resident defendant. According to the Defendants, there is no such agency relationship in this case. Defendant contends that it did not have a recruiter working on its behalf in Texas and that TWC cannot be said to be an agent.

This argument is misplaced under the facts of this case. As the Defendants appear to acknowledge, the case law on which the Defendants rely does not hold that an agency relationship with a recruiter in the forum state is a prerequisite to the exercise of personal jurisdiction in these types of cases. Rather, the cases to which the Defendants cite just happen to involve recruiters, and often the presiding court must determine whether the recruiter is an agent of the non-resident defendant for the purpose of determining whether the agent's actions are attributable to the non-resident defendant. The issue in this case is not whether TWC was acting as the Defendants' agent. Whether TWC is considered an "agent" or not under agency law is of no legal significance in analyzing whether the Defendants purposefully availed themselves of the benefits of the forum state or directed activities to forum residents to satisfy due process. Rather, the focus of the case at hand is on the Defendants' actions or contacts in Texas.

The general crux of the Defendants' arguments regarding the interstate clearance order system and TWC seems to be that the Defendants could not purposefully avail themselves of the benefits of Texas or purposefully direct their efforts toward the forum state because no one knew where intestate clearance orders would be circulated, as that is handled by the OFLC, and the Defendants cannot be held responsible for anything done by TWC since TWC is not an agent of the Defendants. However, the TWC and OFLC do not insulate the Defendants from personal jurisdiction when the record shows that the Defendants' own actions established the requisite minimum contacts and satisfy the "purposeful" requirement. The record does not support the conclusion that Defendants are being haled into a Texas court as the result of random, fortuitous or attenuated contacts or unilateral actions by TWC and OFLC, over which the Defendants had no control. *See Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' ").

Instead, the record supports the conclusion that the Plaintiffs have made a prima facie showing on the issue of minimum contacts for each Defendant. The record shows that, in order to hire workers, the Defendants voluntarily participated in the interstate-clearance order system and offered to take referrals from state employment agencies. Defendants took the deliberate step of making employment available for distribution to states where migrant farm workers are located, such as Texas, and eventually the Defendants were informed that the information was circulated in Texas. Once contacted by TWC, the Defendants relied on the services of TWC to facilitate Defendants' in-state recruitment efforts and, specifically, to recruit and ultimately hire the Plaintiffs. This process involved the exchange of phone calls and faxes. The allegations show that the Defendants, independent of TWC, made phone contact directly with a Plaintiff regarding the out-of-state employment. Resolving any conflict in the favor of the

**552**

Plaintiffs, the Plaintiffs assert that the work arrangements were made and accepted in Texas, notwithstanding that employment-related paperwork may have been completed in Iowa. The Plaintiffs have shown that each Defendant's contacts throughout this process are sufficient to support the exercise of personal jurisdiction under the minimum-contacts prong. *See Int'l Shoe Co.*, 326 U.S. at 318, 66 S.Ct. 154 (stating that although generally single or occasional isolated acts of a corporation are insufficient to confer in personam jurisdiction, under certain circumstances such acts because of their nature and quality and circumstances of their commission, may be deemed sufficient to render the corporation liable to suit); *Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir.1986). (reiterating that even a single purposeful contact related to the cause of action may be sufficient to invoke specific jurisdiction).

 Finally, the Defendants argue that the fiduciary-shield doctrine prohibits the exercise of personal jurisdiction over Defendants Juan and Arturo Deanda. The fiduciary shield doctrine holds that "jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long arm statute." *Donovan v. Grim Hotel Company*, 747 F.2d 966, 973 n. 10 (5th Cir.1984).

The Defendants are correct that jurisdiction over individual officers and employees of a corporation may not automatically be exercised by virtue of the court's jurisdiction over the corporation itself. On the other hand, "their status as employees and/or principals does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity."). Instead, each of the defendant's contacts with the forum state must be assessed individually. *Calder*, 465 U.S. at 790, 104 S.Ct. 1482.

In *Donovan v. Grim Hotel Company*, the Fifth Circuit addressed whether a federal court sitting in Texas could assert personal jurisdiction over a non-resident individual incorporator and company president who was sued individually under the Fair Labor Standards Act and claimed that the court could not assert specific personal jurisdiction over him for his action in Texas based on the fiduciary shield doctrine. *Donovan*, 747 F.2d at 972–74. The Fifth Circuit found that the company president's contacts with Texas were not insubstantial:

> Alberding himself hired the managers of the five Texas hotels. He delegated to those managers—his statutory "intermediaries"—the authority to hire the other employees of the hotels, the very persons who are plaintiffs in this action. Alberding regularly traveled to Texas in connection with the operation of the Texas hotels. And he made personal loans to the Texas hotel corporations and personally signed loan agreements for the Texas hotel improvements. This conduct satisfies the doing-business-by-contract test of the Texas long-arm statute, including the employee recruitment test of that statute.

*Id.* at 973.

In rejecting the defendant's argument and upholding jurisdiction, the Fifth Circuit stated:

> Nor do we find merit to [the individual defendant's] argument that, because his

contacts with Texas were in his role of corporate president, he himself was not doing business in Texas so as to be subject to personal jurisdiction under the Texas long-arm statute. Here, [the individual defendant] is not sought to be held derivatively liable for acts performed by the corporation(s) in Texas that [he] had simply authorized solely in his corporate capacity while he was at a non-resident situs. Most importantly, [the individual defendant] is sued for violations of the federal statute [the FLSA], under which he is statutorily characterized as an employer and is personally responsible for defaults because of his substantial personal control of the terms and conditions of the Texas employee's work in Texas. He, no less than the corporations he owned, directed, and controlled, is personally liable for unpaid statutory wages to his employees. Consequently, his Texas-connected acts that produced injurious effects to the Texas-based employees cannot, as a matter of law or fact, be regarded as performed solely in his corporate capacity.

*Id.* at 973 (internal citations omitted).

Having found that the Texas long-arm statute covered the conduct complained of and that the federal statute [the FLSA] in which the individual defendant was being individually sued on conferred possible individual liability on the defendant, the Fifth Circuit than applied the minimum contacts due process analysis to the case before it, finding allegations of specific acts on the individual defendant's part that conferred specific jurisdiction over the defendant, and held that due process was not offended. *Id.* at 973–74; *accord General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed.Appx. 775, 795 (5th Cir.2007) (not designated for publication) (rejecting application of the fiduciary shield doctrine and concluding that the

doctrine does not bar jurisdiction when the defendant is being sued for specific acts which had reasonably foreseeable consequences within the forum state); *Lewis*, 252 F.3d at 359 n. 6 ("[T]he shield is removed if the individual's personal interests motivate his actions....").

The Court finds that Juan and Arturo Deanda are not shielded from the exercise of personal jurisdiction by the "fiduciary shield doctrine," as invoked under Texas law by the Defendants. In the present case, Defendants Juan and Arturo Deanda are amenable to suit under the Texas long-arm statute, Tex. Civ. Prac. & Rem.Code § 17.042(3), which provides that a "nonresident does business in the state of Texas if the nonresident ... recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." Moreover, the Plaintiffs have made a prima facie showing that the Defendants are amenable to suit under AWPA. The Deanda Defendants are not being sued in their derivative corporate, capacities. Rather, the Deanda Defendants are being sued in their personal capacities and specific jurisdiction is alleged based on the contacts each Defendant had with the forum state. The Plaintiffs' claims arise out of and relate to Defendant Arturo's and Juan's specific contacts with Texas. Based on an individual assessment of the Deanda brothers' contacts with Texas, the Court has found that Juan and Arturo Deanda have sufficient contacts with Texas to satisfy due process and confer personal jurisdiction, as already discussed, and they are not shielded from jurisdiction under the fiduciary shield doctrine.

## 3. Traditional Notions of Fair Play and Substantial Justice

Even if minimal contacts exist, the exercise of personal jurisdiction over a non-

resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Sarmiento,* 439 F.Supp.2d at 730–31.

■ The Defendants argue that they would suffer a substantial burden in being forced to defend this matter in the Southern District of Texas because defense counsel, the bulk of relevant documents, 13 witnesses, including the Defendants, are located in Iowa. The Defendants also argue that any interest Texas may have in protecting its citizens is not particularly strong in this case because the Defendants have offered ample proof that their recruitment activities in Texas were limited, and the Plaintiffs may bear some responsibility for their termination. Finally, the Defendants point out that opposing parties both have an interest in litigating the case close to home.

The Court finds that traditional notions of fair play and substantial justice are not offended by litigating this matter in the Southern District of Texas. *See, e.g., Sarmiento,* 439 F.Supp.2d at 730–31. First, while it may be more burdensome in some respects for the Defendants to defend themselves in Texas, the burden is not substantial or does not undermine due process. The Court observes that the Plaintiffs would also bear a burden litigating in Iowa, to the extent they have limited financial resources and are represented by Texas Rio Grande Legal Aid. Although the Defendants argue that this matter can be easily transferred to Legal Aid in Iowa, the Plaintiffs need not be required to change counsel of record for the convenience of the Defendants. Second, Texas has a strong interest in adjudicating this dispute, as the Plaintiffs have alleged they are migrant workers from Texas who traveled out-of-state for employment in response to the Defendants' recruiting activities in Texas, notwithstanding the reason(s) for the Plaintiffs' ultimate termination. *Cf. Moreno,* 182 F.Supp.2d at 595 (stating that Texas has a legitimate interest in offering its residents an adequate forum for redress, especially in light of the fact that its residents were targeted for employment in another state, and has an interest in enforcing or giving effect to the recruitment provision of the Texas's long-arm statute). Third, the Plaintiffs have a strong interest in obtaining convenient and effective relief by litigating close to home with the aid of existing counsel. The fourth consideration is not particularly compelling either way, as a federal court in either jurisdiction could preside over this dispute effectively. The fifth factor weighs in favor of jurisdiction to the extent that the states share a mutual interest in subjecting the Defendants to jurisdiction in Texas since it promotes the substantive social policies of holding employers engaged in interstate commerce accountable in all jurisdictions in which they solicit employees. *Cf. Martinez v. Murray Employment Agency, Inc.,* Civ. No. L–98–77 (S.D.Tex.1999).

In summary, the Court finds that the exercise of personal jurisdiction over all the Defendants is consistent with the Due

Process Clause of the Fourteenth Amendment. The Court finds that, based on the Plaintiffs' complaint and the affidavits and record evidence submitted, the Plaintiffs have made a prima facie showing that the Defendants have sufficient contacts with Texas for this Court to exercise personal jurisdiction, and traditional notions of fair play and substantial justice are not offended by litigating the case in this Court. As such, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied as to all the Defendants.

### B. Motion to Dismiss for Improper Venue

■ The Defendants challenge venue in the Southern District of Texas pursuant to 29 U.S.C. § 1854(a) due to a lack of personal jurisdiction. The AWPA provides in relevant part that "[a]ny person aggrieved by a violation of this chapter or any regulation under this chapter by a farm labor contractor, agricultural employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 1854(a).

Because this Court has personal jurisdiction over the Defendants, the Court denies the Defendants' 12(b)(3) Motion to Dismiss for Improper Venue *See Moreno,* 243 F.R.D. at 273 (same) (citing *Sarmiento,* 439 F.Supp.2d at 731; *Astorga,* 962 F.Supp. at 96).

### C. Motion to Transfer Venue

■ Alternatively, pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1391(b), the Defendants move to transfer venue for convenience and in the interests of justice. The Defendants move to transfer this case to the United States District Court for the Northern District of Iowa (Western Division). The Defendants' Motion to Trans-fer Venue is denied for the reasons explained below.

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott,* 160 F.3d 1066, 1067 (5th Cir.1998) (internal quotations omitted). However, the discretion is not unlimited. *See In re Volkswagen of America, Inc.,* 545 F.3d 304, 311 (5th Cir.2008) (en banc).

In applying the provisions of § 1404(a), the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004).

■ Second, the party "who seeks the transfer must show good cause." *In re Volkswagen of America,* 545 F.3d at 315. "When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice'" *Id.* "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.* "When the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Id.*

In considering a motion under section 1404(a), the Fifth Circuit directs the court

to consider the private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), a *forum non conveniens* case, as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice. *In re Volkswagen of America, Inc.*, 545 F.3d at 315. "[W]hile the private and public factors 'are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive.' " *Id.* None can be said to be of dispositive weight. *Id.*

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.*

The Defendants argue that the Northern District of Iowa is more convenient because, except for the Plaintiffs, all material witnesses reside in Iowa, the Defendants all reside and work in Iowa, defense counsel is based in Iowa, and all documentation relevant to this cause of action, except for the limited documentation held by the Plaintiffs, is located in Iowa. Also, the Defendants contend that the alleged wrongdoing occurred in Iowa, which weighs in favor of a transfer.

The Plaintiffs argue that the events giving rise to their claims occurred in Texas because the Defendants recruited and hired the Plaintiffs in Texas. Also, the Plaintiffs contend that the Defendants fail to outline the substance of the 13 witnesses testimony to warrant a transfer and the many witnesses may maintain permanent residences within or near the subpoena range of this Court. Additionally, the Plaintiffs argue that Congress has indicated a strong interest in protecting migrant workers from abuse by their employers, and in 29 U.S.C. § 1854(a) gives them the right to sue in any district court having jurisdiction over the Defendants. The Plaintiffs also argue that, even though the Defendants claim that a transfer to Iowa should not create any delay or prejudice to the Plaintiffs, requiring the Plaintiffs to bring their claims in the Northern District of Iowa would dilute the congressional effort to protect migrant farm workers' access to the judicial system. In support, the Plaintiffs cite *Stewart v. Woods*, 730 F.Supp. 1096, 1097 n. 1 (M.D.Fla.1990), for the proposition that "[p]ersons whose occupation is, by definition, migrant would be placed at considerable disadvantage in redressing their rights if they were forced to return to the judicial district in which the offending party resides." The Plaintiffs also argue that, in considering paperwork and records, the location of these is usually given little weight, unless the Defendants can show that the documents are so voluminous that transporting them is a major undertaking, which the Defendants have not done in this case. As for the location of counsel, the Plaintiffs contend that transferring this case to Iowa would simply shift the inconvenience and costs from the moving party (Defendants) to non-moving party (Plaintiffs) and that the Defendants will not be deprived of counsel by litigating in this Court.

As an initial matter, the Court finds that there is no dispute between the parties that the United States District Court for the Northern District of Iowa (Western

Division) is a district in which this case could have been originally brought. · *See* 28 U.S.C. § 1391(b). Therefore, the inquiry turns on the interests of justice and convenience of the parties.

Although neither party has captured recent circuit law concerning venue under section 1404(a), the matters raised by the parties in their respective briefs touch on the private and public factors sets forth in recent Fifth Circuit case law. The Court has considered the factors and concludes that transfer is not warranted. That is, the Defendants have not satisfied the statutory requirements and clearly demonstrated that a transfer is for the convenience of the parties and witnesses, in the interest of justice.

The Court finds that the location of the alleged wrongdoing does not weigh in favor of transfer or is neutral, as the record supports the conclusion that at least some of the alleged wrongdoing occurred in Texas. Although the Defendants claim that all the written records to this litigation are located in Iowa, the Court is not persuaded that this factor weighs in favor of transfer. There is no indication that the written records are voluminous. Moreover, the Defendants offer very little to tip the proverbial scale in their favor on the issue of documentation, as they appear to rely solely on the physical location of written documents or at least fail to explain why this weighs in favor of a transfer. Finally, the Court finds that factors concerning the location of witnesses and counsel are also neutral to the extent that a transfer of venue merely shifts the burden to the opposing parties. *Cf. Moreno*, 243 F.R.D. at 274 ("Of course, the costs of attendance for Plaintiffs were this case to be transferred

to Louisiana must be weighed against the costs to Defendants of litigating in Texas."). Moreover, although affidavits from potential witnesses are not necessarily required, the Court finds that the quantity of possible defense witnesses alone is not enough—all factors considered—for the purpose of establishing good cause in this case. Next, the Court has considered the public interest factors, but none weigh materially either for or against transfer in this case, and little is offered in the way of argument by the Defendants on these factors. The Court also has considered the public interest in protecting migrant workers' rights via AWPA. *See, e.g., Moreno*, 243 F.R.D. at 274 (noting that the public interest in vindicating migrant worker rights favors venue in the non-transferee court) (quoting *Eliserio v. Floydada Housing Authority*, 388 F.Supp.2d 774, 779 (S.D.Tex.2005)); *see also See Volkswagen of America*, 545 F.3d at 315 ("[W]hile the private and public factors 'are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive.' ").[5]

The Defendants have not demonstrated good cause to overcome the Plaintiffs' choice of forum, and a transfer of venue is neither required or warranted. Defendant's motion to transfer venue under section 1404(a) is denied.

## IV. Conclusion

For the reasons stated above, the Court concludes that Plaintiffs have established a prima facie showing of specific personal jurisdiction in this case as to each Defendant. Consequently, venue is proper in the Southern District of Texas. The Defendants further failed to meet their burden to transfer this case to the Northern District of Iowa. Therefore, the Court **DE-**

---

**5.** The Court acknowledges that recent circuit law instructs that "a plaintiffs choice of venue is not a distinct factor in the venue transfer analysis," but "it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *In re Volkswagen of America*, 545 F.3d at 315 n. 10.

NIES in full Defendants' Opposed Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue for Convenience and in the Interests of Justice.

The Clerk shall send a copy of this document to counsel for the parties.