Elias MORENO, et al., Plaintiffs,

v.

POVERTY POINT PRODUCE, INC., et al., Defendants.

No. CIV.A B–06–154.

United States District Court, S.D. Texas, Brownsville Division.

April 3, 2007.

Caitlin Berberich, Southern Migrant Legal Services, Douglas L. Stevick, Southern Migrant Legal Services, Nashville, TN, Kathryn Youker, Texas RioGrande Legal Aid, Inc., Weslaco, TX, Edward B. Cloutman, Law Offices of Edward B. Cloutman, III, Dallas, TX, for Plaintiffs.

Thomas H. Kiggans, Phelps Dunbar LLP, Baton Rouge, LA, Victor Rodriguez, Ellis, Koeneke & Ramirez, L.L.P., Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, L.L.P., McAllen, TX, for Defendants.

## OPINION & ORDER

TAGLE, District Judge.

BE IT REMEMBERED that on April 3, 2007, the Court **DENIED** Defendants, Poverty Point Produce, Inc.'s [sic] and Jeffrey Brown's, Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Or Alternatively, [sic] To Transfer Venue. Dkt. No. 14.

## I. Background

### A. Factual

This case arises out of the Plaintiffs' employment at Defendant Poverty Point Produce, Inc.'s ("Poverty Point") sweet potato fields in West Carroll Parish, Louisiana during the summer of 2005. Dkt. No. 8, at 4. Plaintiffs are migrant agricultural workers who reside in the Rio Grande Valley of Texas. Id. at 1. Defendant Poverty Point is a Louisiana corporation which "operates a sweet potato farm." Id. at 3; Dkt. No. 15, at 2. Defendant Jeffrey Brown is a part owner of, and the field manager for, Poverty Point. Dkt. No. 14, Ex. 1; Dkt. No. 15, at 2. Defendant Raul Leal is the owner and operator of a Texas business, Texas Labor Contractors, which recruited and hired the Plaintiffs to work at Poverty Point. Dkt. No. 8, at 3; Dkt. No. 21, at 4; Dkt. No. 21, Ex. 8. Defendant Jesse Leal supervised the field work by the Plaintiffs, lived with them in the housing provided for their use, received complaints regarding the housing and working conditions from them, and physically presented them with their paychecks. Dkt. No. 21, at 6–7; Dkt. No. 21, Exs. 1, 2, 4–6.

This case began in 2001, when Defendant Raul Leal "contacted Poverty Point ... and represented that he could provide farm workers to Poverty Point." Dkt. No. 14, Ex. 1. This contact occurred exclusively in Louisiana. Id. At that time, Poverty Point did not employ Raul Leal and he was not an agent of Poverty Point. Id. The contact between Raul Leal and Poverty Point was initiated by Raul Leal, it was not solicited by Poverty Point. Id.

After making contact with Poverty Point in 2001, Raul Leal began providing workers to perform field work at Poverty Point's sweet potato farm in Louisiana. Id.; Dkt. No. 21, Ex. 8. All meetings between Raul Leal and Poverty Point or its employees occurred in Louisiana. Dkt. No. 14, Ex. 1. All work performed by the workers Raul Leal provided occurred in Louisiana. Id. Poverty Point has no offices, bank accounts, or telephone listings in Texas. Id. It does not advertise in Texas nor solicit business in Texas. Id.

Nonetheless, Raul Leal does business in Texas, under the name Texas Labor Contractors. Dkt. No. 8, at 3. Therefore, Raul Leal recruited workers, such as Plaintiffs, from Texas to work for Poverty Point. Dkt. No. 21, Ex. 8. Moreover, Jeffrey Brown called Raul Leal in Texas two times per year between 2002 and 2006, "to request that [Raul Leal] recruit and hire a specific number of farm workers for Poverty Point Produce, Inc. and transport them to the Poverty Point Produce, Inc. sweet potato farms in Louisiana." Id.

Plaintiffs in this case were recruited by Raul Leal to work for Poverty Point during the summer of 2005.[1] Id., Exs. 1–6. This recruitment occurred exclusively in Texas, and it involved placement of an advertisement in a local newspaper in Brownsville, Texas. Id.

Upon learning of the opening for workers, Plaintiffs went to Defendant Raul Leal's used car business in Weslaco, Hidalgo County, Texas. Id. At the car dealership, Plaintiffs discussed the position with Raul Leal's wife, they were given information about the job and the housing, and they signed forms related to the position and to the housing rules. Id. Plaintiffs were given information regarding the number of hours they would work each week, the number of weeks for which they would work, and the rate of pay they would receive. Id. Plaintiffs were informed

---

1. Some of the Plaintiffs had previously been recruited by Raul Leal to work for Poverty Point in prior years. See, e.g., Dkt. No. 21, Ex. 2. Other Plaintiffs had never met Raul Leal prior to being recruited for the 2005 season and had never worked for Poverty Point. Id., Exs. 1, 3–6. Regardless, all of the Plaintiffs were recruited by Raul Leal in Texas for the 2005 season. Id., Exs. 1–6.

that Poverty Point was the employer, and the paperwork they signed listed Poverty Point as the employer. *Id.*, Exs. 1–6, 8. Furthermore, Plaintiffs signed employment agreements created pursuant to specific instructions from Jeffrey Brown, Department of Justice Employee Eligibility Verification forms and Internal Revenue Service Form W–4's presented to the Plaintiffs at the request of Poverty Point or Jeffrey Brown, and "Confidential Second Injury Fund Questionnaire[s]" provided by Jeffrey Brown. *Id.*, Ex. 8. All of these documents were signed in Hidalgo County, Texas. *Id.*, Exs. 1–6, 8.

Once hired, Plaintiffs were transported by or at the direction of Raul Leal to Louisiana. *Id.*, Exs. 1–6. In Louisiana, Plaintiffs resided in housing owned by Poverty Point. *Id.* Defendant Jesse Leal resided in this housing with Plaintiffs, and Plaintiffs would report problems with the housing accommodations to Jesse Leal. *Id.*, Exs. 1, 2, 4–6. Additionally, Jesse Leal would confer frequently with Jeffrey Brown at the fields, after which conferences he would give instructions to Plaintiffs, such as how and where to do the work assigned. *Id.* Jesse Leal oversaw the field work, kept track of Plaintiffs' hours, and usually provided Plaintiffs with their paychecks. *Id.*

Upon completion of the work in Louisiana, Plaintiffs returned to Texas. *Id.*, Exs. 1–6.

### B. Procedural

Plaintiffs filed suit against Defendants on September 26, 2006, asserting violations of the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), the Fair Labor Standards Act ("FLSA"), and various state causes of action. Dkt. No. 1. Plaintiffs later amended their complaint on November 3, 2006. Dkt. No. 8. Defendants Jesse Leal, Piedad Leal, and Raul Leal all filed answers to Plaintiffs' First Amended Complaint on December 11, 2006. Dkt. Nos. 11–13.

The motion *sub judice* was filed by Poverty Point and Defendant Jeffrey Brown on January 2, 2007. Dkt. No. 14. Defendants Poverty Point and Jeffrey Brown also filed a Memorandum in Support of their motion on the same day. Dkt. No. 15. After receiving an extension of time to file their response to

the motion on January 22, 2007, Plaintiffs responded with opposition to the motion on February 1, 2007. Dkt. Nos. 20, 21. After reviewing the briefs, the record, and the relevant law, the Court DENIES Poverty Point and Jeffrey Browns' motion in its entirety. Dkt. No. 14.

### II. Standard

 When a defendant seeks dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b), the plaintiff bears the burden of establishing jurisdiction. *See Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490 (5th Cir.1974), *overruled on other grounds, Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), *as stated in Burstein v. State Bar of California*, 693 F.2d 511, 518 n. 12 (5th Cir.1982). Courts usually resolve personal jurisdiction issues "without conducting a hearing," and "the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir.2003); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993). Furthermore, the Court must accept the plaintiff's uncontradicted assertions as true and must resolve all factual conflicts in the plaintiff's favor. *See APA Transp. Corp.*, 322 F.3d at 380; *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir.2000).

 "Since the AWPA and FLSA are silent with regard to service of process, this Court may exercise personal jurisdiction over only those defendants who are subject to the jurisdiction of Texas courts." *Astorga v. Connleaf, Inc.*, 962 F.Supp. 93, 95 (W.D.Tex. 1996). In this case, Poverty Point and Jeffrey Brown's "amenability to personal jurisdiction in this Court is governed by Texas' long-arm statute." *Id.; see also Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F.Supp.2d 725, 728 (S.D.Tex.2006). Because the Texas long-arm statute extends personal jurisdiction to the constitutionally permissible limits of due process, the Court must determine whether the exercise of personal

jurisdiction over Poverty Point and Jeffrey Brown would comport with due process. *See APA Transp. Corp.*, 322 F.3d at 380; *Ham*, 4 F.3d at 415; *Astorga*, 962 F.Supp. at 95.

 Due Process has two requirements: (1) the defendant must have sufficient "minimum contacts" with the forum state, "established when a nonresident defendant 'purposefully avails himself of the benefits and protections of the forum state;'" and (2) the exercise of personal jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." *Sarmiento*, 439 F.Supp.2d at 728 (quoting *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 294–95 (5th Cir.1999); *Ham*, 4 F.3d at 415 (citing *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))); *see also APA Transp. Corp.*, 322 F.3d at 380–81; *Ham*, 4 F.3d at 415. Finally, "minimum contacts" can be established by either of two methods, general jurisdiction or specific jurisdiction. *See APA Transp. Corp.*, 322 F.3d at 381; *Sarmiento*, 439 F.Supp.2d at 728. General jurisdiction is established when the nonresident defendant has substantial contacts with the forum state, which are continuous and systematic, but which are not related to the pending litigation. *See APA Transp. Corp.*, 322 F.3d at 381; *Sarmiento*, 439 F.Supp.2d at 729. Specific jurisdiction, on the other hand, requires only that the nonresident defendant have purposeful contact with the forum state which "arise from or are directly related to the cause of action." *APA Transp. Corp.*, 322 F.3d at 381; *Sarmiento*, 439 F.Supp.2d at 728–29.

## III. Analysis

In their motion, Defendants Poverty Point and Jeffrey Brown assert that this case is not properly before this Court. Dkt. No. 14, at 1–2. Defendants proffer three bases for their contention. *Id.* First, Defendants argue that Poverty Point is not subject to personal jurisdiction in Texas and, therefore, that "this Court lacks jurisdiction over" it. *Id.* at 1. Second, Defendants contend that, because Poverty Point is not subject to per-

sonal jurisdiction in Texas, venue is not proper here. *Id.* Finally, Defendants aver that, even if venue is proper in this Court, venue would be more appropriate and more convenient in the Western District of Louisiana. *Id.* at 2. Therefore, Defendants seek dismissal of the case or, alternatively, transfer of the case to the Western District of Louisiana. *Id.*

### A. Personal Jurisdiction

Defendants' primary argument is that "Poverty Point lacks the requisite minimum contacts with the State of Texas to be subject to the personal jurisdiction of this Court." *Id.* at 1. Thus, Defendants argue, it would violate Defendants' due process rights to require them to appear in this Court. *Id.*

 For this Court to exercise personal jurisdiction over the Defendants, the Plaintiffs must make a *prima facie* showing that the Defendants have minimum contacts with Texas and that such an exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *See, e.g., APA Transp. Corp.*, 322 F.3d at 380. The Court finds that Plaintiffs have successfully met this burden.

There are two methods by which Plaintiffs may show that Defendants have sufficient minimum contacts with Texas to permit this Court to exercise personal jurisdiction over them. *See, e.g., id.* at 381. The first method is to show that Defendants had substantial contacts with Texas which were continuous and systematic, thereby creating general jurisdiction. *See id.* The Court finds that, although Defendants have had some contacts with Texas, this contact is too limited to establish general jurisdiction in Texas courts. Nonetheless, Plaintiffs have provided sufficient evidence of specific jurisdiction to meet their burden at this stage in these proceedings. *See id.*

In this case, Plaintiffs assert claims related to their recruitment in Texas for work in Louisiana, their transportation from Texas to Louisiana, and their actual work in Louisiana. Dkt. No. 8, at 10–14. Two of these activities, the recruitment and the transportation, occurred either in whole or in part in

Texas. *Id.* at 4–10; Dkt. No. 21, Exs. 1–6, 8. Therefore, Plaintiffs must show that Defendants had sufficient minimum contacts with Texas that are related to or arise out of their recruitment or transportation if this Court is to exercise specific personal jurisdiction.

Plaintiffs contend that Defendants Poverty Point and Jeffrey Brown, acting on their own and through their agents, engaged in numerous contacts with the State of Texas. *See* Dkt. No. 8, at 2, 3, 4; Dkt. No. 21, at 2, 4–9, 11–17. Plaintiffs were recruited by Raul Leal in Texas. Dkt. No. 21, Exs. 1–6, 8. They signed their contracts and other employment documents in Texas. *Id.* The terms of their employment and their housing accommodations were told to them in Texas. *Id.* They were transported in vans by Raul and Jesse Leal from Texas to Louisiana. *Id.* "As an initial matter, the Court notes that the alleged recruitment activities are defined as acts constituting business in this state by the Texas long-arm statute." *Sarmiento,* 439 F.Supp.2d at 729 (citing TEX. CIV. PRAC. & REM. CODE § 17.042). In fact, "nonresident employers are particularly liable for their recruiting agents' actions in the forum state." *Id.* Thus, if Plaintiffs can establish that Defendants Raul Leal and/or Jesse Leal were agents of Poverty Point or Jeffrey Brown, specific jurisdiction exists in this case. *See id.* at 730.

Plaintiffs have alleged that Raul and Jesse Leal were agents of Poverty Point and Jeffrey Brown. *See* Dkt. No. 8, at 2, 3, 4; Dkt. No. 21, at 2, 4–9, 11–17. Plaintiffs have adduced evidence that Raul Leal and Jesse Leal were acting on behalf of and under the direction of Poverty Point and Jeffrey Brown during the recruitment and transportation of the Plaintiffs. *See* Dkt. No. 21, Exs. 1–6, 8. Raul Leal was provided with information regarding how many workers to hire, when to hire them for, where to send them, and what information to include in their employment agreements. *See id.,* Ex. 8. Raul Leal was also instructed to have the Plaintiffs sign other employment documentation. *See id.* Furthermore, additional evidence of the exis-

tence of an agency relationship between Raul and Jesse Leal and Poverty Point and Jeffrey Brown is proffered by Plaintiffs in their discussion of the activities that occurred in Louisiana. Plaintiffs have produced evidence that Jesse Leal accepted all complaints about the housing conditions from the Plaintiffs, kept track of their hours, and provided them with their paychecks. *See id.,* Exs. 1–2, 4–6. Jesse Leal supervised the Plaintiffs' field work, and he provided them with instructions after having long discussions at the field with Jeffrey Brown. *See id.* Thus, Plaintiffs have produced evidence indicating that Raul and Jesse Leal were agents of Poverty Point and Jeffrey Brown. *See generally Stripling,* 234 F.3d at 870; *In re Oxford Mgmt., Inc.,* 4 F.3d 1329, 1336 (5th Cir.1993); *Webb Carter Constr. Co. v. La. Cent. Bank,* 922 F.2d 1197, 1202 (5th Cir.1991); *McManus v. S. United Fire Ins.,* 801 So.2d 392, 394–95 (La.App. 2001); RESTATEMENT (SECOND) OF AGENCY § 1 (1958).

Poverty Point and Jeffrey Brown contest Plaintiffs' assertion that the Leals were their agents. *See* Dkt. No. 14, Ex. 1; Dkt. No. 15, at 2. In support of their position that the Leals were not their agents, Poverty Point and Jeffrey Brown provide Jeffrey Brown's affidavit. Dkt. No. 14, Ex. 1. Nonetheless, the Court is mindful that, at this stage in the case, it must resolve all factual conflicts in the Plaintiffs' favor. *See, e.g., APA Transp. Corp.,* 322 F.3d at 380. Therefore, the Court finds that Plaintiffs have met their burden of establishing a *prima facie* case that Defendants have minimum contacts with Texas.

Moreover, the Court finds that this case is closely analogous to *Astorga v. Connleaf, Inc.,* 962 F.Supp. 93 (W.D.Tex.1996). As in that case, Defendants Poverty Produce and Jeffrey Brown sent documentation[2] to a recruiter, Raul Leal, in Texas, and the contracts signed by Plaintiffs were created at the direction and instruction of Jeffrey Brown. *See* Dkt. No. 21, Ex. 8; *Astorga,* 962 F.Supp. at 95. Jeffrey Brown engaged in numerous telephone conversations with Raul Leal, while Leal was in Texas, which conver-

---

**2.** A questionnaire that was to be filled out by the Plaintiffs was sent to Raul Leal. Dkt. No. 21, Ex.

8.

sations were initiated by Jeffrey Brown. *See* Dkt. No. 21, Ex. 8; *Astorga,* 962 F.Supp. at 95. Plaintiffs were all recruited in Texas and signed their contracts, indicating that Poverty Point was the employer, in Texas. *See* Dkt. No. 21, Exs. 1–6, 8; *Astorga,* 962 F.Supp. at 95. These activities, like those in *Astorga,* "are sufficient to satisfy the 'minimum contacts' requirement of the due process test."[3] *Astorga,* 962 F.Supp. at 95.

■ Although the Court has concluded that Defendants have sufficient minimum contacts with Texas, the Court must still consider the second due process requirement. *See Astorga,* 962 F.Supp. at 96. To determine whether the exercise of personal jurisdiction would be fair and just, the Court must consider five factors: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Sarmiento,* 439 F.Supp.2d at 730; *see also APA Transp. Corp.,* 322 F.3d at 384. In this case, the Court finds that litigation of this case in Texas would not pose a substantial burden on Defendants. *See Sarmiento,* 439 F.Supp.2d at 730–31. Plaintiffs, however, would "be severely hampered in [their] ability to pursue [their] claims if [they are] required to litigate them in Louisiana."[4] *Id.* at 731. Texas, moreover, has two significant interests in exercising jurisdiction over Defendants. First, Texas has an interest in protecting its citizens from exploitation by nonresident employers, particularly when its citizens are the targets of recruitment for out-of-state employment. *See Sarmiento,* 439 F.Supp.2d at 731; *Astorga,* 962 F.Supp. at 96. Second, Texas has an interest in enforcing the provision of its long-arm statute that specifically subjects nonresidents who recruit in Texas to service of process and personal jurisdiction in Texas. *See Sarmiento,* 439 F.Supp.2d at 731; *Astorga,* 962 F.Supp. at 96. The fourth and fifth factors do not lean for or against the exercise of personal jurisdiction in Texas, as both Louisiana and Texas are equally capable of enforcing the statutes at issue in this case and of providing an efficient resolution to this controversy. *See Sarmiento,* 439 F.Supp.2d at 731. Thus, based on the first three factors, the Court finds that the exercise of personal jurisdiction over Poverty Point and Jeffrey Brown does not offend justice or fairness. Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED.**

### B. Venue

Defendants also seek dismissal of the case based on improper venue. Dkt. No. 14, at 1. Under 29 U.S.C. § 1854(a), "[a]ny person aggrieved by a violation of this chapter or any regulation under this chapter by a farm labor contractor, agricultural employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to the citizenship of the parties and without regard to exhaustion of any alternative administrative remedies provided

---

**3.** The Court also finds, as did the *Astorga* court, that Defendants' attempt to compare this case to *Aviles v. Kunkle* is unavailing. *See Aviles,* 978 F.2d 201 (5th Cir.1992); *Astorga,* 962 F.Supp. at 95–96. In *Aviles,* the defendant's only contact with Texas was one letter and one phone call. *See Aviles,* 978 F.2d at 203, 205. The plaintiffs were recruited in Ohio for employment in Ohio. *See id.* at 203. No contract was signed in Texas and no recruitment occurred in Texas. *See id.* at 205. That case is easily and clearly distinguishable from the present case, which involved considerably more contact with Texas than one phone call and one letter, including recruitment in Texas and the signing of employment agreements in Texas. *See also Caldwell v. Palmetto State Savings Bank of South Carolina,* 811 F.2d

916, 918 (5th Cir.1987) (finding that the defendant's act of sending one letter to the forum State was an insufficient basis upon which to subject the defendant to personal jurisdiction in that forum).

**4.** In fact, requiring Plaintiffs to pursue their claims in Louisiana may prevent them from pursuing the claims at all. *See Eliserio v. Floydada Hous. Auth.,* 388 F.Supp.2d 774, 779 (S.D.Tex. 2005) (quoting *Aguero v. Christopher,* 481 F.Supp. 1272, 1275 (S.D.Tex.1980)) ("It is well known that many migrant laborers do not have the financial resources necessary to prosecute a claim hundreds of miles from home.").

herein." As stated above, the Court finds that it may properly exercise personal jurisdiction over the parties in this case. *See supra* § III.A. Thus, venue is proper, and the Court **DENIES** Defendants' motion to dismiss for improper venue. *See also Sarmiento*, 439 F.Supp.2d at 731; *Astorga*, 962 F.Supp. at 96.

■ Finally, Defendants request transfer of this case to the Western District of Louisiana. Dkt. No. 14, at 2. The change of venue statute, 28 U.S.C. § 1404, states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court notes that the Western District of Louisiana is a district in which the case could properly have been brought. *See* 29 U.S.C. § 1854(a). Defendants, as the parties seeking transferral, bear the burden of demonstrating that the Court should transfer the case. *See Eliserio*, 388 F.Supp.2d at 775.

■ When considering whether to transfer a case, a court must consider a number of factors. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004); *Eliserio*, 388 F.Supp.2d at 776. These factors include the relative ease of access to sources of proof; the availability of compulsory process to secure the attendance of witnesses; the cost of attendance for willing witnesses; all other practical problems that make trial of a case easy, expeditious, and inexpensive; the administrative difficulties flowing from court congestion; the local interest in having localized interests decided at home; the familiarity of the forum with the law that will govern the case; the avoidance of unnecessary conflict-of-law problems involving application of foreign law; and the Plaintiffs' choice of forum. *See In re Volkswagen*, 371 F.3d at 203; *Eliserio*, 388 F.Supp.2d at 776.

In their motion, Defendants spend little effort arguing or providing evidence for their motion to transfer. Dkt. No. 14, at 2; Dkt. No. 15, at 12–15. In total, Defendants argue that the case should be transferred because litigation in Texas would be inconvenient for Poverty Point and Jeffrey Brown, "all of the events and actions related to this litigation occurred in Louisiana," most of the "primary witnesses" reside in Louisiana, litigation in Texas "would [cause] a tremendous financial burden" on Poverty Point, and "Poverty Point would be forced to transport all of its documentary evidence from offices and the job site location in Louisiana to Texas." Dkt. No. 15, at 12–15.

■ Applying these arguments[5] to the factors the Court must consider in making its determination of whether to transfer this case, the Court concludes that transfer is not warranted. When considering the ease of access to sources of proof, "the location of books and other records is usually given little weight, unless the documents are so voluminous that their transport is a major undertaking." *Sarmiento*, 439 F.Supp.2d at 732; *Eliserio*, 388 F.Supp.2d at 776 (quoting *Gonsalez Moreno v. Milk Train, Inc.*, 182 F.Supp.2d 590, 598 (W.D.Tex.2002)). Here, Defendants have made no showing regarding how many documents would need to be transported. Furthermore, Plaintiffs assert claims based on activities occurring in both Texas and Louisiana.[6] such that it would be no easier to access the location of the alleged wrongs from Louisiana than it is from Texas.[7] *See Sarmiento*, 439 F.Supp.2d at 732. Thus, the Court finds no reason why any source of proof would be more accessible in Louisiana than in Texas.

Additionally, although Defendants argue that "most, if not all, of the primary wit-

5. Defendants fail to provide any evidence in support of many of their conclusory assertions. *See* Dkt. No. 14, at 2; Dkt. No. 15, at 12–15; *but see* Dkt. No. 14, Ex. 1.

6. Despite Defendants' contention otherwise, Plaintiffs have asserted claims based on numerous activities which occurred wholly or partially in Texas. *See* Dkt. No. 8, at 4–14; Dkt. No. 15, at 14.

7. Regardless of whether this case proceeds in Texas or in Louisiana, some of the alleged wrongs will have occurred in another state. Furthermore, Defendants do "not explain why venue would have any bearing on the ability of all interested parties to visit the facilities before trial," argue that the jury would be likely to visit the facility, or argue that it would not be able to use pictures of the facility. *See Eliserio*, 388 F.Supp.2d at 776.

nesses" reside in Louisiana and would therefore not be within the reach of a subpoena from this Court, Defendants fail to identify any specific witnesses whom they intend to call. *See* Dkt. No. 15, at 14; *Sarmiento,* 439 F.Supp.2d at 732; *Eliserio,* 388 F.Supp.2d at 777. Moreover, Defendants have shown no reason to believe that any witnesses would be unwilling to attend a trial in this Court, and "the witnesses could be compelled to attend a pretrial deposition conducted somewhere within the 100–mile limit." *Eliserio,* 388 F.Supp.2d at 777.

Nevertheless, it would be inconvenient for Poverty Point, Jeffrey Brown, their employees, and any other witnesses who reside in Louisiana to attend a trial in Texas. *See* Dkt. No. 14, Ex. 1; Dkt. No. 15, at 14–15; *Eliserio,* 388 F.Supp.2d at 777. Defendant also claims that it would impose a "tremendous financial burden" on Poverty Point to require it to litigate this case in Texas, as it would have to produce witnesses who are residents of Louisiana and its employees would be absent from work. Dkt. No. 15, at 14–15.

▇ Of course, the costs of attendance for Plaintiffs were this case to be transferred to Louisiana must be weighed against the costs to Defendants of litigating in Texas. *See Eliserio,* 388 F.Supp.2d at 777–78. In fact, "[t]he district court should not transfer any case 'where the only practical effect is a shift of inconveniences from the non-moving party to the moving party.'" *Eliserio,* 388 F.Supp.2d at 778 (quoting *Salem Radio Representatives, Inc. v. Can Tel Mkt. Support Group,* 114 F.Supp.2d 553, 558 (N.D.Tex. 2000)); *Sanders v. State St. Bank & Trust. Co.,* 813 F.Supp. 529, 535 (S.D.Tex.1993); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 829 (S.D.Tex.1993). "Here, a transfer would appear to effect such a shift, and Plaintiffs," who are migrant workers, "appear to be less able to bear the burden of that shift." *Eliserio,* 388 F.Supp.2d at 778.

Defendants provide no information regarding the comparative congestion of this Court as opposed to the Western District of Louisiana. *See id.* at 778–79. The local interests are also neutral, because numerous activities and witnesses reside in both forums. *See id.*

(citing *In re Volkswagen,* 371 F.3d at 206). The Western District of Louisiana may be more familiar with the state law claims than is this Court, but both courts are equally capable of applying the AWPA and the FLSA. Thus, this factor weighs slightly in favor of transferring the case. There are no conflict of law problems in this case, as this Court is able to apply Louisiana state law to events which occurred in Louisiana. The Plaintiffs' choice of forum weighs in favor of denying the transfer. *See Sarmiento,* 439 F.Supp.2d at 732–33.

Finally, "[t]he public interest in vindicating migrant worker rights favors venue in" this Court. *Eliserio,* 388 F.Supp.2d at 779. "It is well known that many migrant laborers to not have the financial resources to prosecute a claim hundreds of miles from home." *Id.* (quoting *Aguero,* 481 F.Supp. at 1275). Requiring the Plaintiffs here to litigate their claims in Louisiana "would seriously dilute the Congressional effort to protect migrant workers." *Id.* "Thus, there is a strong Congressional intent and public interest in preserving a plaintiff's choice of forum, so long as venue is proper." *Id.*

Therefore, upon consideration of all of the factors, the Court finds that Defendants have failed to carry their burden of showing that transfer is proper. Defendants' motion to transfer is **DENIED**.

## IV. Conclusion

Based on the foregoing, the Court DENIES Defendants, Poverty Point Produce, Inc.'s [sic] and Jeffrey Brown's, Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Or Alternatively, [sic] To Transfer Venue. Dkt. No. 14.